We'll move to our fifth of six cases for today. Let's let the new parties come in. Okay, we have Mr. Duncan. We have Miss Godfrey. Okay, our fifth case is Adam. Is Okay, Recha. Recha, I'm sorry. Let's hold one second. No problem. Okay, Miss Godfrey, welcome to you. We have Mr. Duncan and we're prepared to proceed with our fifth case, Adam Recha v. Mr. Saul, Andrew Saul, case number 19-3544. Mr. Duncan, when you're ready, you may proceed. Okay, may it please the court, Dana Duncan on behalf of Adam Recha. This case involves basically two points that all revolve around Mr. Recha's limitations and concentration, persistence, and pace and the residual functional capacity finding as well as presenting that RFC finding to the vocational expert. The two issues are the ALJ's reliance on a state agency... Mr. Duncan, forgive me, but I'd really appreciate your helping me with something because the administrative law judge stated, and I'm going to quote, that the claimant's statements covering the intensity, persistence, and limiting effects of the auditory hallucinations are found to be not entirely consistent with the medical evidence and other evidence in the record, end quote. Is this a finding by the ALJ that Mr. Recha's reports of his auditory hallucinations were not credible? Is that what that is? Supposedly, Your Honor, and the problem I have with that is the same problem I have with the state agency findings and with all of the findings made in the decision itself because the ALJ's entire assessment of the case involves the when he had a cognitive evaluation, a finding from September of 2015 when he had a period where his medications were working better, and then the consultative examination of Dr. Reed from January of 2018. He never assessed the rest of the record, so the finding there is the same problem with the finding of the rest of this, which is he doesn't go into the fact that Mr. Recha's had repeated episodes of decompensation where they've had to change his medications on multiple occasions, how he has had suicidal ideation, how he has had negative visions. He's having hallucinations at one point in time of dead pets that are talking to him, and none of this is evaluated in the record. We then go on to the fact that he relies on the state agency psychologists, and I would point out the supplemental material from the Commissioner indicates that the ALJ can rely on state agency assessments, and indeed they can, but this is not a per se rule. It's not all the time that they are allowed to do that. There has to be support for the medical evidence. In this particular case, we look at first, we have two opinions that the judge said he relied on, Dr. Fitzpatrick and Dr. Reed. Dr. Fitzpatrick, the state agency creates what's called the Disability Determination Explanation, or DDE, which is found in the A section of the record. That is supposed to be a set of findings that are made both by the examiner as well as by the medical professionals regarding the claimant's condition. In there, they outline what records they considered, and in this DDE shows for Dr. Fitzpatrick, and they saw there's no records noted that they received after June of 2015, yet Dr. Fitzpatrick's assessment indicates that something from... Mr. Duncan, Mr. Duncan, hold on one second. Mr. Duncan, why don't you just rewind about 30 seconds and make your point? I know you've unplugged your video, which is fine, but we want to make sure we get the point you're making. So can you repeat it? I don't know what happened with the video, Your Honor. Yeah, the court, the clerk's office personnel in the courtroom just stopped the video to increase your bandwidth on the audio. So it's nothing you did on your end. So we have, we still have the benefit, of course, of you being with us, but we want to make sure we got your point. All right. So the only finding that Dr. Fitzpatrick made that was different from the initial evaluation was done by Dr. Donahue was one finding, and it's on page 591, excuse me, one record on page 74 of the record. She notes from 9-23 of 2015, intention, concentration, clinically intact, able to participate in interview with no more than average distractibility, no evidence of delusions, paranoia, or auditory hallucinations, insight good, judgment fair to good. This corresponds with a finding from Mr. Reach's counselor, Randy Ahrens, at page 591. Even that record indicated auditory hallucinations reported. So even that one finding she made, and that's the basis for her entire finding, more or less, is that is inconsistent with the actual record. There's no indication that she considered the August 3rd record, where he's talking about hurting his girlfriend with sharp objects. There's no, he's hearing voices on August 17th. He's hearing voices that made him want to do things or doubt himself on September 14th. He takes, he's talking about cutting his wrists on October 27th. He's talking about a box cutter taking him southwest in November 1st. None of this stuff is noted by Dr. Fitzpatrick. None of this is in the record. None of this is noted by the ALJ. We then go on to the fact that he then says, well, I still give this weight in whatever. But he also gives weight to Dr. Reed. Now, the problem I have with Dr. Reed is, and thankfully, she put this in because it's almost never seen in a consultant report. There's 500 and some pages of mental health records. And yet, Dr. Reed says, I have reviewed only 29 pages of examiner who sent them, and we don't have any idea. And yet, we look at this, she doesn't put anything in there except she notes September 17th, worsening hallucinations and sleep. And that's the only evidence we have. That's on page 1020 of the record. And yet, none of this is in there from 2016, or most of 2017. I mean, we're talking about the fact that he's been changed on thoughts of suicide, he's incoherent at times, he's indicating he's having hallucinations more frequently. He's hearing voices that tell him to hurt his girlfriend. None of this is in there. None of this is noted in the record. And then on top of this, we then have him saying, I'm relying on this. Well, SSR 16-6P is the commissioner's policy statement on how to evaluate state agency doctors. And the law says that you can't wait those opinions to the degree they're supported by the record. It doesn't say the judge has to have detailed assessments or anything. The judge can go through and show in his decision, how they're consistent with the record. He can also, if the state agency doctors do it, cite to them individually. But this is a situation where we can't. There's not a whole lot of case law. I would note that I am doing some research just over the last 10 years. There's only a few opinions. One is out of Ohio, one is out of Indiana, where they even discuss this. It's just like somehow or another, we have this idea that the state agency doctors say that's good enough, and it's not. And that's all we have in this trial. Mr. Duncan, I don't know if you can hear me. It's Judge Scudder in the courtroom. We're having a hard time hearing you. Derek, is there anything we can do to improve that connection? Okay, let's just hold on one second. There's tremendous feedback and choppiness, and your words are not coming through. Can you hear me, your honors? Yes. Yeah, give it a shot. And I don't understand. Give it a shot. All right. I apologize. I thought I had my key people make sure this was working, and it's apparently not. The problem is, we have all of the various problems with these two opinions. And quite frankly, on this record, if I was concerned that the NLJ should have given weight to a treating physician's report based upon this record, I would be probably summarily denied by this court. Yet somehow or another, we have this idea that the state agency doctors have some magical knowledge of the situation, and whenever they get it correct, and that's not accurate. In this particular case, now, I would point out in conclusion here, or coming down to the end here, the ALJ could have still fixed this problem. Under the Martin guidelines, if the ALJ would have explained and provided limitations of corresponding concentration persistence, he could have still had been able to uphold this based upon the findings. The POMS, or the Policy Operations Manual System, DI-25020.1, or 010B3, outlines the basic criteria for the performance on skilled work. Mr. Duncan? Maintaining attention for two hours. Yes. Can you hear me okay? Yes. Okay. I have a question for you about a statement you make in your opening brief, and I'm asking the question because I want to try to understand what's in front of us on appeal. On page two of your brief, in a footnote, footnote two, you observe that there was a second issue that was raised before the district court, but is abandoned on appeal, and you say that issue is therefore waived. Can you explain what you're referring to? Are you talking about a point that your client raised? Are you talking about a point from the agency? I'm not sure what's been waived and who waived it. I'm not sure who waived it. Your Honor, what had happened was that there was a second issue I had presented to the district court, and I just determined that that was not worth pursuing on appeal. Okay. Is that second issue? What was that second issue? The weighing of the medical evidence by the ALJ? The weighing of the medical evidence by the ALJ? Just a second, Your Honor. I'm not offhand. I apologize. It wasn't necessarily something I thought to look at. Well, here's why I'm asking the question. In the work that we did to prepare for the case, it looked to me like the second issue that you raised in the district court was one challenging the way the ALJ weighed the evidence, and if you're telling us that that is now a point that you want to waive on appeal, I want to be clear about that because it seems like the lion's share of your argument is all about challenging how the ALJ weighed the evidence. I think that connection is not great here. Maybe you could submit a letter to the court after the argument just to clarify the point you're making there, because I want to make sure that we understand the scope of appeal. Yes, Your Honor, and I guess what I would honestly say to that extent is it's not necessarily the weighing of the evidence, but it's where the ALJ came up with the limitations that he is articulating. He did not include any limitations regarding concentration, persistence, and pace because he relied on the state agency doctors who did not articulate anything other than these particular limitations. So, his reliance on the state agency doctors is where he came up with the limitations that were contained in the RFC, and to that extent, the failure to provide any limitations on concentration, persistence, and pace is directly related to his reliance on those state agency doctors. Okay. Why don't we hear from Ms. Godfrey, and we'll come back to you for a couple of minutes. You ran through your time, but I'm going to give you a couple minutes. We've had a bad connection here. So, Ms. Godfrey, why don't you go ahead and make your comments? Thank you, Your Honor. Jean Godfrey on behalf of the Commissioner of Social Security. I want to start out by noting that Mr. Recha raises only one argument before the court. He claims that the ALJ failed to accommodate the moderate rating in the area, the broad functional area of concentrating, persisting, or maintaining pace in the work limitations. Well, you know, Ms. Godfrey, I was very troubled that the ALJ did not include specific information about the auditory hallucinations in his hypothetical to the limitations. I mean, I don't even know if it would be safe for him to be in a workplace environment. He stated that he has command auditory hallucinations, telling him to hurt himself, telling him to hurt others. I mean, this seems to be a very big elephant in the room that might not have been discussed. Yes, Your Honor. Well, as you pointed out earlier, the ALJ found Mr. Recha's subjective allegations inconsistent with the record as a whole. And his analysis appears on page 16 of the administrative record. And the first full paragraph of that page, he reviews Mr. Recha's allegations, including his statement that he could not concentrate because of the auditory hallucinations that he heard. And the ALJ explained that he found those subjective allegations unsupported by the record as a whole. And opposing counsel did not challenge that subjective symptom analysis before the district court or in his opening brief. So any argument regarding the subjective symptom finding would be waived or forfeited. And the ALJ appropriately concluded that the auditory hallucinations did not warrant any additional limitations. He acknowledged that although Mr. Recha reported difficulty concentrating, all of the objective medical evidence demonstrated that he had intact attention and concentration. He underwent neuropsychological evaluation in December 2014, which revealed only slightly below average overall attention, intact memory, and no difficulty following task directions. He received treatment with a therapist and a psychiatrist. And the treatment records consistently documented intact attention and concentration, no evidence of delusions and paranoia. And although they did document reports of waxing and waning auditory hallucinations, the treatment providers consistently found no behavior suggesting a response to internal stimuli. And the findings of the January 2018 consultative examination were also largely normal. Dr. Reed, the consultative examiner, performed a number of tests specifically intended to measure Mr. Recha's concentration, attention, and memory. And the results of those tests were all normal, which supports the ALJ's finding that Mr. Recha was capable of performing simple routine and tasks. And the opinions of both Dr. Reed and Dr. Fitzpatrick also support that finding. What about Dr. Reed, who only reads 29 pages of a 697-page record? What if I only read 4% of your brief? You'd be very upset with me. I probably would. But here, Dr. Reed made clear which medical records she considered, and she also summarized the findings of those records. And she considered a number of key pieces of evidence. As I stated, she considered the December 2014 neuropsychological study. That's an unusual argument, Ms. Godfrey. I apologize. Can you hear me now? Yeah, give it another shot. Okay. As I was saying, she considered a number of key pieces of evidence and summarized that evidence. She acknowledged that he received treatment for schizophrenia and that he was a narcissist. But more importantly, in addition to the records that she considered, she also performed a mental status examination of Mr. Recha, which he fails to acknowledge anywhere in his brief. And so regardless of the records that she did or did not consider, her own examination findings support her opinion. She found that Mr. Recha had no limitation in his ability to make simple work-related decisions. And her opinion supports the ALJ's finding that Mr. Recha could perform simple routine and repetitive work. In addition to Dr. Reed, the ALJ... Are you saying that there was a failure to challenge the fact-finding that the self-reporting about the hallucinations were not credible? Is that what you're saying? Um, yes, Your Honor. Mr. Recha did not challenge the ALJ's subjective symptom analysis, and he argues that additional limitations are warranted solely based on his subjective reports of hallucinations. And there is no objective evidence or medical opinion evidence that supports that allegation. And the Social Security Act explains that a claimant's own subjective symptoms are insufficient alone to establish disability. So here we have his reports that hallucinations rendered him disabled, but there's nothing else to support that. The objective medical evidence simply does not support those subjective allegations, and he did not challenge the subjective symptom analysis. Importantly, he also fails to identify... And you said he does not challenge. Are you talking about on appeal? Are you talking about in front of the ALJ? I just... I want to make sure I'm not confused with this waiver point that's made in the brief. Well, he didn't raise a subjective symptom challenge at the district court or before this court. As I stated earlier, his sole... What about before the ALJ? Can we start from the beginning? In front of the ALJ, yes, no. In front of the ALJ, Mr. Recha argued that he was unable to concentrate due to auditory hallucinations. Yes. And that was dropped in front of the district court? Is that what you're saying? Yes. There was not a specific subjective symptom challenge. He challenged the ALJ's weighing of the medical opinion evidence and the ALJ... He claimed that the ALJ did not adequately accommodate the moderate rating and the broad functional area of concentration, persistence, or pace. And that is the only argument that he presents before this court. What... Did the agency... Did you come into this appeal this morning thinking that anything has been waived? Yes. Okay. And what is that something that's been waived? Well, Mr. Opposing Counsel included the footnote that Your Honor referenced earlier, explicitly waiving his second argument, which was challenging the evaluation of the medical opinion evidence. But then he goes on to argue that the ALJ inappropriately relied on the medical opinions and evaluating Mr. Recha's subjective... Yeah, I got to tell you, I can't make heads or tails out of the waiver point, because... Oh. And maybe Mr. Duncan can clarify what he's talking about, because I don't understand how you can come in to the Seventh Circuit and say, I'm not waiving, or I'm waiving everything having to do with the weighing of medical evidence, and then write a 30 or 40 page brief challenging the weighing of the medical evidence. I don't... So I'm not sure as I sit here right now what's before us and what's not before us. Well, I agree, but waiver aside, the arguments that he raises are without merit. The ALJ appropriately relied on the opinions of Dr. Reed and Dr. Fitzpatrick, and the work limitations he found are tied to the record evidence. If the court has no further questions, I ask that you affirm the ALJ's decision. Okay. Very well, Ms. Godfrey. Thank you. Mr. Duncan, can you hear us by telephone? Yes, Your Honor, I can. Can you... Would you mind starting with that question that I'm stuck on? I don't understand what you were intending to convey to the court with your waiver footnote, and if you made a mistake, you made a mistake. But what is it that you think is in front of us on appeal? What I believe, Your Honor, is before the court is the specific RFC finding of the ALJ and the support or what he used in order to support that. And in this particular case, and as outlined, I believe in what I was able to catch from Ms. Godfrey, they're saying that the ALJ could rely on the state agency doctor's opinions because they said the only limitation that Mr. Richa had was simple routine and repetitive tasks. Yet the ALJ says he relied on all these and then came up with an RFC based upon the reliance on those, yet none of the evidence in this case supports those still examined both for concentration, then persistence, then pace. We're talking about an individual who could not... Can you stop there real quick? Have you waived anything on appeal in your mind? As far as... No, I have not waived anything that's pertaining to the specific findings outlined. And I just wanted to... Okay, so hold on, hold on. Do you withdraw footnote number two in your brief? Yes. I think it's becoming more a problem than it should be. I just wanted to clarify that basically it was not a separate issue. I'm not even sure I know what it means. I don't know if it's a problem or not. I don't even know if I know what it means. I have no idea of what you have waived, what you think you have waived, what you have dropped out of the case. I have no idea. I am flummoxed. I apologize, your honors. I guess what I'm saying is the language in the footnote was a separate issue, but it was supposed to be all one big issue so that it was clear that I was not. But what is the issue that you were dropping? I just didn't want to have a separate articulation issue regarding the overall weight of the evidence because I wanted to focus primarily on the issue of concentration, persistence, and pace. The underlying... And I'm not even sure that the footnote should have been in there in retrospect because in looking at the brief, there really wasn't a separate issue that was per se waived. So I guess I would withdraw that it shouldn't have been there. I guess I didn't understand. Maybe at the time I'm writing the brief and I apologize. To be perfectly honest, I'm writing the brief in my lobby trying to answer telephones at that particular time. I thought I had made sure everything was correct because we were on shutdown when the brief was being written. So I apologize. I don't think I was really trying to waive anything. It was more an argument or a point of trying to steer the court into understanding that it was one argument, not multiple arguments. I didn't bifurcate the arguments the way I did in the district court. Okay. Thanks to both counsel. We'll take the case under advisement from where we're at here. And if we need to issue an order, we will. But the court is going to have to discuss that to talk about whether we need any further clarification. So thanks to both counsel. We'll move to our sixth.